IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| ROBERT SACCO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | COMPLAINT |
| Vs. | ) | (JURY TRIAL REQUESTED) |
| | ) | |
| CITY OF CHARLESTON, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Plaintiff, Robert Sacco, by and through his undersigned attorneys Bonnie Travaglio Hunt of Hunt Law LLC and Peter M. Kaufman of Kaufman Labor Employment Solutions, LLC, do hereby make the following claims and allegations:

## PARTIES AND JURISDICTION

1.  The Plaintiff is a resident of the State of South Carolina.  At all times employed with City of Charleston in Charleston County.

2.  The Defendant, City of Charleston (hereinafter referred to as City and/or Defendant) is a public entity which operates in the State of South Carolina.

3.  All parties and events herein mentioned are within the jurisdiction of this Honorable Court.

4.  This Court has jurisdiction over the parties and subject matter and venue is proper.

## PROCEDURAL HISTORY

5.     That the Plaintiff filed a charge of discrimination with the EEOC alleging discrimination based on the vaccine requirement, Religious Discrimination, hostile work environment and retaliation on July 3, 2022.

6.     The Charge set forth the following:

I.     *That I am a current employee of the Employer. That I was hired on August 5, 2013, as a Firefighter.*

II.     *That I am a Christian. That based on my religion I have sincerely held religious beliefs regarding the ethical nature of the vaccine.*

III.     *On September 3, 2021, my employer issued a vaccine mandate. I was informed that if I did not comply with the vaccine mandate I would be terminated from my employment with the City.*

IV.     *After the Mandate was issued, I requested an exemption due to my religious beliefs.*

V.     *That on November 3, 2021, my employer developed an unreasonable accommodation that caused undue hardship by requiring employees to be subjected to weekly testing and wearing a mask at all times. My employer purposefully instituted an accommodation that was significantly unreasonable in order to force employees to subject themselves to the vaccine.*

VI.     *On November 24, 2022, I was required to participate in weekly mandatory COVID testing. I was required to provide a negative COVID test every Thursday by noon. I was required to be tested on my time off at my own expense. I was*

*informed that if I failed to provide a negative test, I would be suspended without pay on the first two occasions and if a third time occurred I would be immediately terminated. The testing requirement is indefinite.*

VII.    *After the request for an exemption and the development of the unreasonable accommodation myself as well as others began to suffer significant retaliation and a hostile work environment.*

VIII.    *My employer singled out all individuals who requested an exemption. The employer allowed and perpetrated a hostile work environment that allowed employees to treat the individuals differently, single them out, subject them to differential terms and conditions. The hostile work environment further perpetrated a delineation between vaccinated and non-vaccinated subjecting the non-vaccinated to commentary, harassment, ostracism, and banishment. That I further had my position with the Department threatened to be terminated at any time because of my refusal to be vaccinated which further perpetrated a hostile work environment.*

IX.    *That on February 15, 2022, a Deputy Chief specifically sent out an email with all names of persons who requested an exemption.*

X.    *That due to my requests for exemption based on my sincerely held religious beliefs my employer discriminated against me due to my religion, subjecting me to retaliation and hostile work environment.*

XI.    *My employer failed and refused to treat me fairly based on my religion and exemption.*

XII.    *That as a result of my requests I was subjected to a hostile work environment that was severe and pervasive.*

XIII.    *That I was subjected to a hostile work environment based on Religious Exemption/Accommodation requests in violation of Title VII.*

XIV.    *That I have been subjected to retaliation based on my requests and my complaints regarding the exemptions.*

XV.    *My employer has retaliated against me by changing the terms and conditions of my employment and instituting a discriminatory work environment that is severe and pervasive in violation of Title VII.*

7.    That the EEOC failed and refused to conduct an investigation into the charge of discrimination filed with their office and issued a right to sue on each case.

8.    The EEOC issued its right to sue on August 29, 2022.

9.    The Right to Sue set forth the following:

*DETERMINATION OF CHARGE*

*The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The*

*EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.*

*NOTICE OF YOUR RIGHT TO SUE*

*This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice. Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)*

*If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 415-2022-001158.*

10. That not more than 90 days have passed since the issuance of the Rights to Sue.

## CITY POLICIES

11. Equal Employment Opportunity (EEO) The City of Charleston is firmly committed to Equal Employment Opportunity as a fundamental policy to be implemented and observed in our daily operation.  We will not tolerate discrimination in employment based on age, sex, race, religion, color, disability, national origin, veteran status, political affiliation, or any other characteristic protected by federal, state, and local laws…In addition to its commitment to compliance with State and Federal laws relating to unlawful harassment, the City also strives to create and preserve a work environment free from discomfort or

pressure relating to any personal characteristics such as personal appearance or family obligations. It is the responsibility of each employee to help ensure that the work environment is free of discrimination and harassment. Anyone who violates the City's Equal Employment Opportunity Policy will be subject to discipline, up to and including discharge. The City strives to create an environment that enables all employees to work free from threats and acts of discrimination and harassment. Should an employee believe that he or she has been discriminated against, sexually harassed, or harassed because of any other protected statute, it is in the employee's and the City's best interests to bring the matter to the attention of the EEO officer so that corrective action can be taken. The City has designated the Director of Human Resources and Organizational Development as its Equal Employment Opportunity Officer (EEO). The EEO Officer is responsible for the development, implementation, enforcement of, and compliance with this policy. Complaints may be made by any of the methods discussed in the Anti-Harassment/Anti-Discrimination policy below.

12. Prohibited harassment may take the form of written, spoke, physical, or visual harassment and may include, but is not limited to: epithets, slurs, derogatory comments, jokes, intimidation, negative stereotyping, threats, comments on social media, sites, assault or written or graphic material that denigrates or shows hostility or aversion toward employee or group because of the characteristics identified herein...Prohibited conduct includes but is not limited to: conduct on City of Charleston Property, in City of

Charleston vehicles, on City of Charleston communication systems, during City of Charleston-related events, and in connection with City of Charleston business.

13. The City had a clear Code of Conduct regarding the behavior of its employees. The Code of Conduct set forth that many behaviors that discredited the City or violated the policies of the City as violations of the Code.

## FACTS

14. That the Plaintiff was an employee of the City of Charleston in the fire department.

15. That the Plaintiff was hired on August 5, 2013, as a Firefighter.

16. That the Plaintiff was considered an exemplary employee during his employment in the City and received pay raises commiserate with his performance. The Plaintiff's supervisor was Captain W. Finley.

17. On September 3, 2021, the Plaintiff was notified that the City would be implementing a COVID vaccine mandate and if he did not comply he would be terminated. The Plaintiff was further informed that individuals with medical circumstances or religious view that conflict with the vaccine can file for an accommodation. The Plaintiff was further informed that the accommodation request was not a guarantee but merely a request. The Plaintiff was also informed that if the accommodations are rejected that the Plaintiff would have to choose between the vaccine or his job.

18. That the Plaintiff requested exemptions due to his religious beliefs.

19. The Plaintiff was granted that exemption at the beginning of November 2021. The Plaintiff was presented the procedure by the Fire Department with no Human Resources

representative present.  The Plaintiff was informed that the persons presenting the procedure were a representative of the Mayor and Human Resources.  At this meeting the Plaintiff was informed that after we filed for accommodations, and it was granted the employees should be expected to be brought in for "further review."  The Plaintiff was informed that someone from HR would question him to ensure that his faith was sincere.

20.    The procedure for the exemption was the following:  A. Can only get tested in the 72-hour window. Any results outside this window are null and void. B. Can only get tested at city approved testing sites. C. If a testing site does not provide test results in a timely fashion and the employee can't provide results by Thursday at noon, the employee is considered at fault and will receive an infraction.  D. Employees must get tested on days off from work. Strictly prohibited from getting tested while at work. If the employee is working three 24hr shifts during the testing window; no exception will be made to get tested. E. The employee is expected to pay for all testing out of pocket. If a testing site accepts City of Charleston insurance the employee is prohibited from using the insurance. It is in writing from the city that if the employee uses their insurance to pay for a weekly test, the cost of the test will be deducted from their paycheck. F. If the employee does not feel sick nor display any Covid symptoms, they are expected to get tested.

21.    After providing a negative test result, the Plaintiff was still expected to wear a mask at all times except while eating, bathing, and sleeping.  Once providing a negative test result the Plaintiff was still expected to socially distance from others in common areas while wearing a mask.

22.    The City purposefully instituted an accommodation that was unreasonable on November 5, 2021 in an attempt to force employees to subject themselves to the vaccine.

23.    That the City made the decision to implement a strict, unfair, and unreasonable accommodation that caused undue hardship by requiring employees to be subjected to weekly testing and wearing a mask at all times.  That the exemption required weekly testing at DHEC locations.  The City refused to accept any other testing such as CVS or Walgreens. Many of the free DHEC locations were outside the city and required the Plaintiff to drive extensively to comply with the City's requirement of only DHEC locations.  The City allowed for Rapid tests from one location that vaccinated received free testing but the Plaintiff's and other unvaccinated were required to pay for.

24.    Even if an employee properly had a test performed but failed to receive the results within a certain time frame the repercussions were harsh.  The City intentionally instituted these policies and requirements to force the unvaccinated despite their health or religious beliefs to have the vaccine.

25.    The Fire Department held meetings with the "unvaccinated" to answer questions but failed and refused to have Human Resources Present.  Human Resources' presence at these meetings was integral to allowing the persons with exemptions to have dialog and clarity regarding the requirements of the policy.

26.    That the City singled out individuals who requested exemptions and treated them differently.   The vaccinated were not subjected to ridicule, weekly testing, mask requirements inside and out, meeting repercussions, training repercussions or hostility.

27. That the Plaintiff was singled out for refusing to take the vaccine because of his religious beliefs.

28. On December 30, 2021, the Mayor of the City of Charleston sent an email titled "Mayor's Office Update-December 30, 2021, which set forth the following:

**Mayor's Office Update**
**December 30, 2021**
**Supervisors: Please post for the benefit of those without access to email.**
**Community Cases & COVID-19 Protocol Changes**
From December 20th to December 27th, the 7-day rolling average of new cases increased by more than 200% in Charleston County and increased 102% in Berkeley County over the same time period. Percentage of positive tests has also increased to almost 13% in Charleston County and exceeded 14% in Berkeley County.

Due to the rising cases, for two weeks effective Tuesday, January 4, 2022 employees will be required to wear masks indoors in common areas and when unable to socially distance from others regardless of vaccination status. This includes when in city vehicles. Visitors will also be asked to wear masks when inside city offices. Building and office signage should be updated accordingly on Tuesday morning. Please contact the Safety Management Division at safetymanagement@charleston-sc.gov for updated signage. We know going back to required face coverings is challenging and appreciate everyone doing their part to create a safe environment. We will continue to monitor the data closely.

It is strongly suggested to use two-ply or KN-95 masks, not single layer cloth masks. If you would like a supply of KN-95 masks, please alert your supervisor so they can make the request to the City's Safety Management Division.

It is also strongly suggested to avoid in-person meetings. During these two weeks, employees who are able to work from home and have received supervisor and department head approval to do so will not be restricted to the two-day policy limit.

Please contact the Safety Management Division at safetymanagement@charleston-sc.gov with questions about COVID-19 protocols in the workplace and they will be happy to assist you. For Fire Department specific protocol changes, please contact Chief Chesher and for Police Department specific protocol changes contact Lt. Gamard.

## Omicron Variant

Based on sequencing performed by MUSC, tests collected during the week of December 14th were 61% Omicron. Although Omicron is proving to be highly transmissible, some good news is that lab studies show that boosters raise the efficacy back to 80% against Omicron. If you received your primary series at least six months ago, please consider getting a booster if you have not done so already. The SCDHEC vaccine locator is a useful tool for those scheduling vaccine appointments.

Need assistance? Call 1-866-365-8110 for help with COVID-19 vaccine questions
and provider information.

## COVID-19 Employee Cases & Testing

As of yesterday, there are 23 positive COVID-19 cases among employees and another 49 awaiting test results. As a reminder, **DO NOT COME TO WORK IF YOU ARE SICK OR SYMPTOMATIC**. Symptoms of COVID-19 can include the following: fever, cough, shortness of breath, fatigue, muscle or body aches, headache, new loss of taste or smell, sore throat, congestion or runny nose, nausea or vomiting or diarrhea.

Employees who are close contacts to known positive cases or are experiencing symptoms should report this to the Wellness Office by calling 843-720-5098 or 843-958-6412, stay home and wait to receive further instructions on testing and isolation. The city has an option for COVID-19 testing where results are returned very quickly. Appointments are required and can be made simply over the phone. Directions for making an appointment, as well as the testing location, can be found below.

-Phi Lab now tests Monday through Friday. For an appointment, please call Dorothy Fitzsimmons, RN, at 803-518-1382 to schedule your appointment. She takes calls 6:00 am – 10:00 pm
-They perform testing 8:00am-10:30am. Phi Lab is located at 645 Meeting Street.
-Below is a summary of Phi Life Lab's adjusted holiday hours.

Friday, Dec. 31st - Open (COVID testing from 8:30 am to 10:30 am by appointment only)
Saturday, Jan 1st – Closed

At this particular testing center, testing fees will be billed directly to the city, not processed through insurance. You do have to be on the city's health insurance to be eligible to test at this site. Family members on the city's health insurance, including kids, can also be tested here. You are not required to use this testing site – this is simply one reliable option that will return test results in a timely manner.

Continue to do your part to stop the spread of COVID-19 by getting vaccinated, wearing a mask when indoors and around people who don't live in your household, keeping your distance, avoiding crowds and poorly ventilated spaces, washing your hands often and monitoring your daily health.

29.    That December 30. 2021 and email was sent to all fire fighters by Greg Chesher,

Battalion Chief of Health and Safety which stated the following:

*All,*
*In accordance with the below email from the City the decision was made by the City in consultation with MUSC and DHEC to return to Phase 3 of the COVID plan. In order to comply with this mandate the CFD will be reinstituting some of our COVID Protocols effective Monday January 3, 2022.*
*1. Any employee that is sick or having signs or symptoms for COVID shall not come to work and if you become symptomatic while at work you shall report out sick. In either of these cases you should contact the Chief Szoke for further guidance. Current signs and symptoms for COVID are the following:*
*a. Fever, chills, or body aches. (Temperature of 100.4 or greater)*
*b. Shortness of Breath*
*c. New or unexplained cough*
*d. Abdominal pain, diarrhea, or nausea*
*e. Unexplained runny nose or congestion*
*f. Sore throat*
*g. Unexplained or persistent headache*
*h. New loss of taste or smell*
*2. All employees (vaccinated or non-vaccinated) will be required to wear a mask in any City facility other than the Station they are assigned to for line personnel. This includes going to Training, Technical Services, HQ, or any other City*

*facility. Any employee that was granted an exemption, as per the form you signed, while you are on duty you are required to wear a mask indoors (this includes your station or place of work) to the best of your ability.*

*3. Day shift personnel (vaccinated or non-vaccinated) are required to wear a mask in all City Facilities including their own. Once they reach their work space and can properly social distance they can remove there masks but if they leave their work space and go into public spaces then a mask is required.*

*4. Fire Stations will be closed to the public except for official city business. All visitors that are on official city business must wear masks in all City Facilities. Please print the attached signage and post on all entry doors into your station or facility.*

*5. Day shift workers (vaccinated or non-vaccinated) are required to abide with the policy attached when it comes to riding in a vehicle with more than one person.*

> *a. If two or more people are riding together in the same vehicle then they are required to sit the furthest apart as they can (2 people riding together means one in the driver's seat and the other in the right rear passenger seat),*
> *b. Windows must be rolled down*
> *c. Vents open*
> *d. Fan running*
> *e. Outside air (not recirculating)*
> *f. Masks must be worn.*

*6. Continue to completely disinfect the stations daily with disinfecting solution that was used in the sprayers in the past. If you need more please contact Technical Services.*

*7. Masks are not required at this time when you are outside.*

*8. Social distance from other people when at all possible and wash hands regularly.*

*9. Outreach and public events: These can continue and should be scheduled outside if at all possible, if outside is not possible then it should be held in a large auditorium or gym. When inside of a non-city facility it is required that Fire Department employees wear a mask and social distance as much as possible. Formal scheduled events at the Fire Stations are not authorized.*

*10. Responding to Medical Calls:*

> *a. Our employees are still required to wear a mask on all medical calls and to place a mask on the patient if they can tolerate it*
> *b. If the call has the possibility of a COVID exposure then full PPE(N95) is required*
> *c. Limit the number of our personnel providing patient care which limits the number of personnel possibly being exposed*

*We understand that everyone is "COVID Tired" but in order for us to try and control the spread of COVID these protocols had to be reinstituted. We appreciate everything that you have done and everything you are currently doing to help us keep our team members safe and healthy. If anyone has any questions please feel free to contact me.*

30.    On January 14, 2022, the Plaintiff was notified that until further notice he could test 96 hours (Sunday) prior from the required Thursday noon deadline.

31.    On January 20, 2022, the Defendant sent out emails regarding who would test and when.

32.    On February 14, 2022, the City updated their COVID policy and lifted the mask mandate but still required testing.

33.    On or about February 15, 2022, Deputy Chief Forrest Cockcroft sent an email to 228 fire department personnel.  This widely distributed email contained a confidential list of 49 individuals with approved accommodations.  This information has been made easily accessible on an electronic source, disclosed personal protected information to the Plaintiff's peers and revealed the identity of accommodated individuals to one another. The email specifically set forth that it was the supervisor's responsibility to monitor and ensure compliance with the City's policies regarding COVID.

34.    Because the list was assigned the title "Personnel with accommodations", it further identifies the remaining unnamed fire operations personnel as being vaccinated.  This was a direct violation of HIPAA law and the City's EEO policy as described in the employee handbook on page 65 under APPENDIX B - CODE OF CONDUCT.  Lastly, according to the EEOC "Medical information includes not only a diagnosis or treatments,

but also the fact that an individual has requested or is receiving a reasonable accommodation."

35.     This email caused significant dissension in the department between the vaccinated and unvaccinated.    The email further subjected the Plaintiff to hostility from Supervisors because now they had the extra responsibility to ensure the unvaccinated complied with the requirements.

36.     The several employees attempted to grieve the treatment received as part of their employment.    Kay Cross, Human Resources Director, informed these individuals that there was no grounds for a grievance and the matter was closed.

37.     The Plaintiff felt he was being discriminated against for his sincerely held religious beliefs and personal medical decisions.    The mass distribution of this list at a time when the mask mandate for other employees was lifted has created an environment where the Plaintiff felt targeted and feared future retaliation from the City for speaking out.

38.     That on February 24, 2022, the Complainant was notified that Human Resources was going to suspend testing for individuals that were not vaccinated as of March 21st.    The City was well aware that there would be issues regarding obtaining testing for the last two weeks because the free testing sites provided by DHEC were closing.

39.     That the City failed and refused to enforce the mask mandates across the board.  That this failure led to more favorable treatment to the vaccinated.  That the unvaccinated were restricted regarding their movements, subjected to ostracism, excluded from meetings.

40.    That as a direct and proximate result of the City's intentional and unlawful action of wrongfully ostracizing the Plaintiff and others based on their vaccination status due to religious during their employment, caused emotional damages, compensatory and consequential damages.

41.    That the Plaintiff is entitled to an award of all damages available under the law for the actions of the City discriminating against him based on his religion, failing to accommodate his request and retaliating against him by creating a severe and pervasive work environment.

**FOR FIRST CAUSE OF ACTION**

**RELIGIOUS DISCRIMINATION/HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII**

42.    That Paragraphs one (1) through forty-one (41) are hereby incorporated verbatim.

43.    That the Plaintiff has been treated differently based on his religion by the City.

44.    That the Defendant allowed the Plaintiff to be discriminated against based on his religion in violation of the laws and their own policies and procedures.

45.    That the publication of the letter and the status of the employees who refused to take the vaccine created a hostile work environment that created differential treatment.

46.    That the Plaintiff was considered an exemplary employee.

47.    That the Plaintiff properly requested exemptions from the COVID-19 vaccine in accordance with the law and the policy of the City.

48.    That the City created an exemption that created a hardship for the requestors.

49.     That the request to not be vaccinated did not create a hardship for the City.

50.     The City no longer requires the vaccine.

51.     That the City granted the Plaintiff exemption request with requirements that created hardship for the Plaintiff, created a hostile work environment and ostracized the Plaintiff based on his religious beliefs because the City believe that they could bully the unvaccinated into getting a vaccine.

52.     That the Plaintiff was subjected to differential treatment based on his religious beliefs.

53.     The Plaintiff suffered unwarranted discipline.

54.     That the Plaintiff was subjected to ridicule and differential treatment based on his religion.   Other employees were not subjected to the same ridicule or differential treatment.

55.     That the hostile work environment included commentary, bullying, incessant emails regarding testing and masks, constant reminders regarding masks, ostracism, failure to include in certain meetings and training, that was severe and pervasive.

56.     That the Plaintiff were ostracized for their religious beliefs.

57.     That the Defendants discriminated against the Plaintiff based on his Religion.

58.     That the Defendants took adverse employment action against the Plaintiff by:

    (a)     Failing to protect the Plaintiff from discrimination based on his Religion;

    (b)     Refusing to enforce its own policies;

    (c)     Subjecting him to bullying;

    (d)     Subjecting him to blatant discrimination,

(e)     Publishing him personal health decisions,

(f)     Failing and refusing to prevent discrimination in accordance with their policies.

59.    That the Defendants subjected the Plaintiff to discrimination in violation of the law.

60.    That, as a direct and proximate result of the Defendants' intentional, unlawful and discriminatory actions, the Plaintiff:

    a.  Suffered severe emotional distress;

    b.  Incurred attorney's fees and costs of this action.

    c.  Expense of maintaining the unrealistic and detrimental requirements of their reasonable accommodation.

61.    That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees, costs of this action, and other damages such as this Honorable Court deems appropriate and just.

## FOR A SECOND CAUSE OF ACTION

## RETALIATION FOR COMPLAINTS REGARDING RELIGIOUS DISCRIMINATION

62.    That Paragraphs one (1) through sixty-one (61) are hereby incorporated verbatim.

63.    That the Plaintiff is an employee as defined by Title VII.

64.    That the Plaintiff has filed complaints regarding religious discrimination.

65.    As a result of those complaints the plaintiff has been treated differently and subjected to retaliation.

66.     That the Defendant retaliated against the Plaintiff by subjecting the Plaintiff to differential treatment.

67.     That as a result of the Plaintiff's complaints the Plaintiff suffered retaliation for each of his complaints.

68.     That the Plaintiff was considered an exemplary employee.

69.     As a result of the Plaintiff's complaints regarding discrimination based on his Religion and hostile work environment based on his previous complaints the Defendant retaliated against the Plaintiff by subjecting him to hostility, bullying, commentary, changes in schedules, excessive testing, and subjecting him to a hostile work environment.

70.     The Defendant's actions described herein were intentional and inflicted upon Plaintiff to ensure severe mental and emotional distress.

71.     As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which he should be compensated.  Including future losses related to refusals to provide appropriate raises and positions.

72.     That the Defendant is the direct and proximate cause of injury to the Plaintiff.

73.     That the Plaintiff is entitled to an award of damages from the Defendant.  That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Federal and State Law.

## **PRAYER FOR RELIEF**

WHEREFORE plaintiff prays that this Honorable Court:

A.  Accept jurisdiction over this matter, including the pendent claim;

B.  Empanel a jury to hear and decide all questions of fact;

C.  Award the Plaintiff lost wages, future lost wages, lost benefits and future lost benefits;

D.  Award to plaintiff compensatory and consequential damages against the defendant;

E.  Award to plaintiff All damages available to the plaintiff damages against the defendant for their malicious discrimination against the plaintiff in violation of Title VII;

F.  Award to plaintiff the reasonable attorneys' fees and costs incurred in the prosecution of this matter;

G.  Award all damages available to the Plaintiff pursuant to Federal Law and State Law;

H.  Permanently enjoin the defendants, their assigns, successors, agents, employees and those acting in concert with them from engaging in religious discrimination, disparate treatment or retaliation against plaintiff and

I.  Enter any other order the interests of justice and equity require.

Respectfully Submitted,


s/Bonnie Travaglio Hunt
Bonnie Travaglio Hunt
Hunt Law LLC
Federal Bar # 07760
SC Bar # 12341
Attorney for the Plaintiff
4000 Faber Place Drive, Suite 300, N. Charleston, 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709
Facsimile (843)492-5509
bthunt@huntlawllc.com


s/Peter Kaufman
Peter Kaufman
Kaufman Labor & Employment Solutions, LLC
SC Bar #100144
295 Seven Farms Dr. Ste C-267
Charleston, SC 29492
(843)513-6062
pkaufmanlaw@gmail.com

November 21, 2022